Okay, the next matter to be heard by the court is 515 0203 and re Adoption of J.W. A minor child at all. And is it Mr. Jones? Okay. Jones when you're ready. Good morning. Your Honor's may it please the court. My name is Daniel Jones and I represent the appellant family choices and FPC the guardian of the minor child at issue. We are here today to ask this court to reverse the lower courts decision to deny our motion to dismiss both the motion for rehearing and the argument filed by the perspective adoptive parents in this case in the motion to revoke filed by the natural parents in this case, and I won't be later all the facts, but I think the selling facts are first of all the child J.W. Let me understand one thing you represent family choices. Correct only. Yes, that's correct. The guardian of the child. This child J.W. Was born on August 4 of 2012, which makes the child over three years old now. On October 9, 2012. So just slightly after the child was two months old. The natural parents in this case sign their surrenders of their parental rights. And so Mr. Jones, do we know who prepared the surrenders? The surrenders were prepared by Deborah Krauss-Cobb, who is the attorney representing the adoptive parents. And they identified family choices is the agency to which the surrender. Who is the day you're referring to your honor? The the. Cobb identified family choices as to who the child would be surrendered to. Correct, correct. It wasn't a general surrender. It was not a general surrender. It wasn't a specific surrender. Or a specific consent. Consent, I mean. It was not a specific consent to any particular party. That's correct. It's a general surrender, if you will, to family choices. And the attorney, Ms. Cobb. Did she know that her clients wanted to adopt this child? I cannot answer that for you, your honor. I don't represent Ms. Cobb. We represent, I represent family choices. Can you tell us the relationship between Ms. Cobb and family choices? Who are aware of that? I would take it. Yeah, family choices is run by a mother and other family members are part of family choices. That is correct. However, it's important to remember that Ms. Cobb does never, does not, and nor does she ever represent the natural parents in this case. And to suggest that they have any sort of, that she had any sort of duty to them is simply incorrect. She had a duty to her clients. If she knew that the clients were the ones who were going to adopt the child, she knew she, I mean, she had a duty to prepare the proper paperwork that would allow the specific adoption, correct? She may have, Judge. But that's not the issue here. Was she reported to the ARDC? I don't know the answer to that, your honor. And it's beyond the scope of, I think, this hearing and the representation. The germane factors are about the surrenders in this case. And that's why... Correct, the germane factors are about her representation of these individuals and what she knew, correct? Well, no, the germane factor on this appeal is all about timing, Judge. It is about the statute of limitations. I understand it's about timing because of the paperwork she prepared. Correct. I mean, there's, the statute is clear that there's consents and there's different surrenders and there's differences. And depending on what the lawyer knows, there's a duty to prepare X versus Y versus Z. There are different kinds of surrenders. There's a difference between a surrender and a consensual, your honor. I would disagree that there is a different way to treat them. In this case, the statute specifically mentions surrenders or consents. It does not matter when you're talking about the timing of how this works. And it's important to be- I agree with you that that statute on consents and surrenders does not matter. But I'm looking at 750 ILCS 50-10, preparation of the different kinds of paperwork, section A versus section C. Yes. You agree with me that her representation becomes significant as to the kind of paperwork that she prepared. I mean, she knows that these clients of hers want to adopt a child that is living, a child who's living at the time. Correct. And the people surrendering their parental rights want to give that child to her clients. I don't understand why she gave the child to her mother's organization. And I don't understand that either, Judge. And I'm afraid I'm not going to be able to answer that question for you. And so you have come here to say that her conduct, assuming that it is as alleged, it doesn't matter because the statute says 12 months. That's your argument? Judge, for the purpose of this hearing, we will, and we would contest all of these allegations of trouble. The purpose of this hearing, we would have to admit that. And we are saying, yes, because the statute of limitations is absolute. The statutory language is clear. The five cases, and there's only five that have interpreted this statute, are also very clear. The 12 months is clear and unequivocal. And if you read those five cases, there's a gambit of arguments there. There's arguments about fraud. There's arguments about the thing is void ad venitio because it was monetary exchange given for the adoption. There's claims of discovery rules should apply. And the courts have said no. It is a clear and unequivocal statutory language. And that ban is absolute. And it doesn't matter the theory. You can claim a writ of habeas corpus proceeding and try and attack jurisdiction. It doesn't matter. It is an absolute and final statute of limitation. Mr. Jones, is there an attorney of record or an attorney that represents Family Choices in any of their matters? In this case? No, that's employed or under contract. Do you have any idea? I do not know that. Okay. Because it seems pretty convenient that just coincidentally, Family Choices is the agency that the child is surrendered to. But yet, you can stand here and say you have no idea about anything related to the duty of Attorney Krause or any of the dealings with respect to either her clients, which she did represent, and or the biological parents. And yet, your company gets the benefit of the fact that there is this choice of surrender to Family Choices, which I understand is all housed in the same building. Is that correct or not? I'm not sure if there's, I think they share an address. I don't, I think there's partitions. And happens to be closely related. There's a mother and a brother. Is that correct? Correct. Of the attorney that does represent the intended adoptees. Great. Judge, and again, I want to point out and mention the duty that's owed to the natural parents. There's no duty owed to the natural parents here by Ms. Cobb. And it's not as if Ms. Cobb could accept these surrenders. These parents had to go before a judge because the statute says that, and that's what happened. But Ms. Cobb did make a decision to prepare surrenders, and somehow that decision was made. And somehow those surrenders versus specific consents got to the biological parents. Correct. And these parents had every opportunity to take the consents to an attorney of their choosing. And this argument was made in the Dr. Samuel Lee case, and if you read that. And then these parents not only had the opportunity to take it to independent counsel, they had to appear before a judge. Okay, that was my question, counsel. They did appear before a judge, is that correct? Absolutely. And what judge took the surrender? I don't know. I don't know as I stand here as Judge Rice. Do you know who was present when the surrenders were given? As far as, I don't, Judge. I wasn't there, and I don't know. And our firm was not there. Nobody from your firm was there? Nobody from our firm was there, Judge. Your firm was hired to represent this appeal. Our firm was brought in once the motion for a re-hearing was filed by the prospective adopted parents. And the motion to revoke was filed by the natural parents. So it's after the judge denied the petition for appeal that was filed. So you were involved at the trial court level? We were on this motion to dismiss, Judge, yes. Correct. And so you know the allegations, but I just can't get in my mind how you can stand here and Who, it is alleged, Deborah Cobb knew, wanted to adopt a related child. Correct. And yet she gave, she prepared paperwork that did not give the child to a related person, her clients, but to her mother's company. And you expect us to buy into all of that. I have to tell you, I find the facts of this case probably the most shocking I've had as a lawyer and a judge in my 37 years of practice. That's how bad I see this case. And yet, you say you have no knowledge, you have none investigation. I don't get that. Well, Judge, if you look at the timeline. I see the timeline. I'm talking about the paperwork. Okay. The paperwork gets filed in October of 2012. That's when the surrender is. The surrenders, though, were incorrect according to the. Correct. And I'm not saying that there's not some action against Ms. Cobb. There very well may be. I don't know that. But Judge, it is over. She certainly deserves to be reported. And if no one has done it, I will do that myself. I don't know if anyone's reported or not, Judge, and you're certainly free to do so. But it takes almost a year. Don't you think you have an obligation to report conflicts of interest such as this? Conflict? The conflict of interest. Judge, if you remember the timeline, it takes over a year before the judge dismisses it. Almost a year before the judge dismisses this. And that's why I can't stand up here and tell you what the facts are. Our crime does not come in here until well over a year after all this begins. But, and I don't know that. But you did an investigation of the facts. You wrote a brief. I did write a brief. Right? Yes. So you had to do some investigation, and it's your client who receives this child. Yes. I agree. Why are we here? Why did your client not allow the adoption? Why was there a psychological? What happened in this scenario that this child did not get to the intended aunt and uncle? Well, if we want to go there, I do. Family choices, it is their standard practice, as I understand it, to have a family or a home study done. And it's my understanding there was something in the prospective adoptive father's past that would not allow the adoption to go forward. Is a psychological study required in a related adoption? It is not. So that's something they chose to do? That is, correct. And it's my understanding they do it as a matter of course. So they were the ones who objected to the adoption of the aunt and uncle before Judge Rice? Yes. Is there a monetary benefit that your client receives by having custody of a child? Does the state pay? How does your client make money with children? I think that when the child is placed, that is where the money transfers to. How does the money transfer? I think the child with whom the parents are placed pays for their services in doing the background checks and all of that. So are you saying that these parents that were the aunt and uncle did not pay any money towards the adoption even though it... I don't know. You don't know that? I don't know. Okay. Because I think that what Justice Cates is inferring is perhaps there's, at least in this situation, there may have been continual fees from the aborted adoption and then perhaps from another adoption. And I don't know, Judge. I really don't. I would be pure supposition on my part to guess that. But the way things work with your client is that if someone surrendered to your client, just anybody, and your client received the child, then when your child, when your company placed the child, then your company made money. Yes. So it was to your- They can't make money from getting a child from the natural parents. So it was to your client's benefit that Ms. Cobb took a surrender that assigned the child to your company and then your company benefits by getting money when you assign the child to the non-aunt and uncle. Right? Well, yes, because they become a guardian at that point. But I mean, there's an economic incentive here for Ms. Cobb to assign a child to her mother's company because she knows that her mother's company is going to make money off that child. Right? They make money, yes. If the child had been assigned directly to the aunt and uncle and removed your company, there would have been no money made, there would have been no fees. And even if the court determined that the adoption was not to take place, if it was a specific consent adoption, the child would have gone back to the biological parents. Yeah. I see my time is up. Thank you for your time, Judy. Mr. Groschon, what do you have to say about this, Mr. Groschon? Please report. It's a situation where a lawyer has divided loyalties and as a result of that, a family lost a child. But how do you get around the very, very plain language of the statute? Pardon? How do you get around the very, very plain language of the statute that it even includes fraud and duress? I would argue that the statute has no exceptions in it. It expressly says if there is a consideration of duress or fraud, you've got a complaint in a year or you're out. That's what it says. It does not say anything about the discovery rule. It doesn't say anything about equitable estoppel. It doesn't say anything about conflict of interest. But it appears to have like a proposed period of a year. Well, it does talk about that, but there are considerations greater than that. One of which, we have a lot of rules in our profession. We are governed by that, our law here and that statute. We talk about fundamental fairness. We have client confidentiality requirements. We have rules in relation to conflict of interest. If you look at the juvenile cases that I have cited to you, which are very analogous. They're substantively the same conflict of interest wise. None of them are adoption cases. They are. They're not adoption cases, but they are analogous in the sense that the adoption cases terminate parental rights by judicial order, or the juvenile cases do. Whereas the adoption cases do that by either a consent or a surrender. But in any event, it's a termination of parental rights. Uniformly, in the juvenile cases where a court has found that there is a conflict of interest per se or otherwise, they set it aside. The consideration in the juvenile cases, which I think is very analogous here, is that where you have a conflict of interest, that trumps everything else that's happened. It permeates what has happened. Indeed, one of the cases out of this circuit, the SG juvenile case, is quite telling. What it says is that the conflict of interest is a concept that's central to our profession. As a matter of sound judicial policy, as a matter of the sound administration of justice, you can't let a situation go by where there's a conflict of interest like this that permeates the entire proceeding, which this did. You can't let that stand. It's a... They talk about the... How is conflict of difference, help me with, conflict of interest different than fraud? How can we distinguish between... How can we say legally that conflict of interest is different than fraud? Okay. A fraud is if you're trying to do something intentionally wrong, pull the rug out from under somebody in some way, that is, I assume, discoverable at some point in time. The situation here is, from day one, which you've observed, these people wanted to have a child adopted by a relative. There's a specific statute that says how to do that. You don't need psychological examinations. We don't need all kinds of things. We have a special consent. And if it doesn't work out, then the child comes back to the adoptive parents. Here, this lawyer is looking past us, but she sees... She's got, right across the hall from her office, she's got her family's adoption agency. How convenient. And what she does is, she signs these people up to do an adoption, and then, what does she do? She knows that they want to have their child adopted by specific relatives. Does she fill out the paperwork to do that? No. Instead, she chooses to fill out paperwork that would surrender this child to her mom's agency, right next door, knowing that not only are these people paying her as a lawyer, they're paying their mom's agency, they're paying for all kinds of psychiatric testing and whatnot that they don't need, and then, they pull a rug out from under them at the end, so now they can adopt this child to someone else and charge fees all over again. Well, we can actually appreciate all that as either actually happening or potentially happening. What about Ms. Krause? Why isn't she involved in this lawsuit? And have you turned her in to the ARDC? Has anybody turned her in? I know that there's an ARDC complaint. Related to this case? Related to this. I know there is one. I didn't have anything to do with that, but it was done. Whether there's a civil suit, I don't think there is at this time, although I think the statute doesn't run it. Because they're able to stand here and say, you know, it wasn't our duty. We just happened to be the beneficiary of all this, but we had no duty to do anything, and we don't know what happened and why and how. The trial judge probably is in the best position to determine all that, and what he did was, he denied their motion to dismiss, knowing what the statute said, and said it's a peculiar set of circumstances. In effect, Harvey got an exception to what the statute on its face said. You have authority, general supervisory authority over the administration of justice. You've got it. There's a statute, I want to say it was Supreme Court Rule 267 or something, that gives you authority, but you also have supervisory authority over the administration of justice. If you had a criminal case, and the court has the power to dismiss criminal cases based on what their statutory reasons, double jeopardy and a variety of other things, but there are cases that say a court has the authority to dismiss even a criminal case, a felony case, under the general supervisory authority over the administration of justice, on a ground not in the statute. This is an analogous situation where this statute doesn't, what it does is it sets up a statute of repose for a year. Based on public policy considerations. They want to promote finality. Sure. They want to promote finality because it's an adjustment for everybody to get this over with and not have to drag out for a year. Forever. But one of your cases that I cite to you, I think it's S.G. says, it's not finality at any cost. That case specifically, and that's a case out of this circuit, it's not finality at any cost. There is a price to pay. And here, a greater, a greater consideration is, if you can't let a lawyer who has a direct, clear conflict of interest do things like this to people, we have a duty in our profession to step in and right the wrong when you see it like this. There was a civil case I cited to you where the guy, the kid got injured in the railroad case. And that was nine years before where they settled the case and the railroad lawyer represented the child and the railroad. Now, okay, is that fraud? Sure is. It's also a conflict of interest. And it was such a clear conflict of interest they set everything aside nine years later. Now, there was a one-year statute that they were facing, but this statute is, it says what it says, but it doesn't have anything in it that says it is greater than the consideration, the paramount considerations of our profession of conflict of interest which overrides the same exact situation in all those juvenile cases. They have all kinds of cases where a lawyer represents multiple people in the same case or people in succession and uniformly they set those, you know, considerations ahead of terminating parental rights. And that's what we have here. We have a termination of parental rights but it's interesting counsel argues about this one year because a year ran out. You know, it ran out on Deborah Carlisle Cobb's watch, too. She had the case. She, the adoption expert, knows that if she waits a year, she's eliminated the ability of the people to come in and argue about this. In fact, it was filed shortly thereafter. Once they knew. Until the time ran out when she did it. That's where we are. I guess the way that this could be resolved is for this family choices to withdraw its objection to the adoption of this child. If people visit with the child. I can't imagine they do that but I agree with you. I mean, I don't understand. So you've at least tried that. You've tried to work it out where the offender here and her mother's group allowed the adoption to go through. I mean, you can avoid this rule of statute if the company just says, okay, we're going to put things back to ground zero. I agree. But they've not you've tried that and they've objected. We've had no overtures from them. The only thing is, we've asked for authority to visit with the child on multiple occasions. That's been turned down. So having no other choice we've launched ourselves through the trial court. Interestingly, the trial court that was chosen in the county that these folks lived in. They live in Jersey County. This case would have been in the 4th district if she'd have filed that. It's in Krause's decision, Krause-Kopp's decision where to file what the drug. She drew up the consents here. Where does the child reside? Jersey County? Now? At that time? At that time it resided with the parents, adoptive parents. In Jersey County? That child was named after those people. At birth? Where did the child reside? Where did the biological parents reside? What county? Did you say Jersey? I think that the biological mother resided in Jersey. I'm not sure about the father. When I contacted him once before, he was in jail. And so where he really is, I really can't represent. The Family Choices is a Madison County. Is Family Choices a Madison County resident? No. Well, I don't know. It's Collinsville. It may be St. Clair or Madison. I think it's in Madison County because I think Krause-Kopp's law office address is in Madison County. I'm pretty sure that that's right. I know they're in the same building right next to each other. The same phone numbers and reception people. So it's all one operation really. Same reception people? Same reception people? I think so. Here the lawyer's financial interest obviously conflicts with Family Choices' financial interest. Family Choices makes money if they just reject people and go over and over and over with the same child looking for other people to apply for adoption. Whether that's the plan or not, I can't tell you right this second. But again, this is one of those situations where they're based on an appeal. They've admitted for the purposes of appeal that there's a conflict of interest. They've admitted fraud too, but that's barred by the statute. But the conflict part's clear. It's not only clear, it's not only admitted, it's a per se conflict. This is not one where, you know, if I had to demonstrate bias and prejudice, I could do that. And I think it's obvious from what we've got. You know, if you look at the order that the trial judge entered in this case, when he terminated parental rights, he set in his order on how the child's free for adoption by the petitioners. He knew, everybody knew that this was a consent case of going to be an adoption by related people. And they knew it from day one and this lady engineered this to give her family the authority to trump it. And that's what they did. And the reason that they did, I'm not sure, but they set a lot of hurdles in the way that were time-consuming and costly that none of it needed to be done in the first place. I respectfully request that Ahmed be sent back to the trial court so that he can proceed. Any more questions? Thank you very much, sir. Thank you. Mr. Jones? Thank you, Your Honor. May it please the court and counsel, and I understand the court's anger with Ms. Cobb. She did not fill out the correct form on this. I think our, at least my anger extends further than that. I don't understand why your client just doesn't make what should have happened, happen. Which is what that this child be adopted by the aunt and uncle as originally contemplated. I don't understand why this is not settled. Because what was turned up in the family background check is going to make that impossible. But that was something that was engineered, as Mr. Grosham says. That was something that was not necessary under the law, but for the fact that your client requested it. It wasn't necessary. It was an expense these people got charged for. And who makes that decision? You? I mean, your client? Family Choices does it as a matter of course, is my understanding. I understand, but it wasn't required. And that has turned up information that will make it impossible for this aunt and uncle to adopt this child. Impossible under whose terms? I think under any trial judge's terms that are out there. Okay, assuming that is true, if Ms. Cobb had adequately represented her clients, she would have recommended a specific consent rather than a surrender. Because no one, even the aunt and uncle,  that child would go to an adoption agency. And your question is what? I'm sorry. Well, why don't they then consider a void consent? The child could go back to the biological parents. Well, I think counsel said the father's in jail. Well, that doesn't mean the mother isn't willing and able. Maybe, and I don't know the answer where the mother is, judge. But there's not been an attack on the appointment of Family Choices as the guardian. And to assume this conspiracy just goes on and on and on, you're assuming the fact that Family Choices, yes, they made money because they get a background check. They do it in every case. And you're assuming then that they knew the background check was going to reveal these facts about the adopted father. No, no, no. Not at all. Not at all. What I at least am concerned about is the fact that you got you, your client, Family Choices got custody at all of this child. If the record is, as Mr. Groshong says, that the original order says that now the child can go to the petitioners, then your client shouldn't have been involved at all. Period. Originally, you mean originally? Originally. And it did. And so you're out. Again, it wasn't until the background check was done. No, but what you're trying to say is it's just a coincidence that instead of a specified consent to adopt that there's a surrender to the agency that just happens to be a family relative of the attorney that's representing the potential adoptee. I mean, you're playing it. No, and I'm not meaning to play a game, but I think there's this grand conspiracy that this child  these adoptive parents because they somehow knew the background check would work out. No, that's the end result. That's the end result. But the way the whole thing is set up, it's not in the best interest of either the biological parents or the attendant adoptees. It's in the total best interest of, and we're not sure how Ms. Cobb really herself, if she benefits from it, but certainly her family benefits from it. And I don't disagree with that, Judge. And had the adoption been set up correctly, my point is, and I don't think you get this, your client wouldn't have been involved at all. No. Nada. Out. The paperwork would have gone right to the petitioner. Correct. The aunt and uncle. So what are you doing standing here? The only reason you're here is because this lawyer set it up to cheat these people. There's no other explanation for that. Give me one. She filled out the wrong form, Judge. I think that's one possible explanation. She filled out the wrong form, and then she gave it to her mother's agency. This is a woman who did adoptions. Maybe I could claim that, because I didn't do adoptions. But she did. I don't know. So why is your client here? Your client never should have been in this mess at all. Well, our client ends up being a guardian, Judge, and that may be the case, but they did, and I guess I don't know how to answer that question. As I said, it's a shocking case. Shocking. Very sad. But thank you. Thank you. Thank you, Mr. Grosham. This matter will be taken under advisement, and an order will issue in due course.